United States District Court
Middle District of Pennsylvania
Williamsport Division

Theodore Briggs

    Plaintiff

V.

SMU Counselor and
Unknown BOF Employee
Of USP Lewisburg

    Defendants.

_____/

Bivens Complaint Pursuant to
28 U.S.C §1331

Case#

(Jury trial demanded)

**FILED
WILLIAMSPORT**

MAY 19 2021

PER_____
      **DEPUTY CLERK**

I.    Preliminary Statement:

Plaintiff Theodore Briggs hereby submits this Bivens complaint against SMU Counselor and Unknown BOP employees of the U.S.P Lewisburg in Pennsylvania. These Defendants are being sued in <u>both</u> their individual and official capacities for violating Plaintiff's Constitutional right of access to the court. In sum, when plaintiff provided Defendant SMU Counselor with his outgoing legal mail, **1** the SMU Counselor, including others

---

**1**    The sealed envelope containing Plaintiff's Bivens Complaint Form which alleged an excessive force claim against a prison guard who shot the plaintiff in the shoulder while he was in USP Lee County.

1

Unknown Defendants, intercepted the Bivens Complaint, removed the Bivens Complaints from the envelope, then sent the empty envelope to the local post office for processing and delivery to The United States District Court. The Post Office returned the empty envelope to USP Lewisburg mailroom.

Defendant SMU Counselor and Defendant John Doe #1, and possibly other unknown defendants, signed a fictitious name on the return-receipt requested card in order to make it appear to plaintiff that his Bivens Complaint was received by the clerk's office for the United States District Court for processing and filing. Shortly thereafter, plaintiff's cell was searched by Defendant John Doe 2, who illegally confiscated plaintiffs legal file which contained the only copy of the Bivens Complaint. **2**

---

2     Because plaintiff is a novice at law, he had a jailhouse lawyer draft and complete the Bivens Complaint which process took four or five months. As a result, the defendants collectively accomplished their illegal scheme to deprive plaintiff of his constitutional right of access to the court where he could litigate his cause of action for redress.

Consequently, this Instant Bivens Complaint follows:

II : The Parties

1. Plaintiff Theodore Briggs who resides at 26 High Street, Unit 2 Norwalk, CT. 06851

2. Defendant SMU Counselor who is employed at USP Lewisburg which is at 2400 Robert F Miller Dr, Lewisburg, PA 17837

3. Defendant John Doe #1 who is a mailroom officer, who is employed at USP Lewisburg 2400 Robert F Miller Dr, Lewisburg, PA 17837

4. Defendant John Doe #2 whose title is unknown, who is employed at USP Lewisburg 2400 Robert F Miller Dr, Lewisburg, PA 17837

3

III: Statement of Facts:

A. USP Lee County

1. On July 31, 2017 at USP Lee County, Pennington Gap, VA.24274

---

3   The basis of the claim transpired over a period of time in which Plaintiff was designated and redesignated to three different BOP facilities namely USP Lee County, FMC Lexington and USP Lewisburg.

Plaintiff entered the recreation yard in the area by the high tower on the right side of the yard. Three prisoners began to verbally threaten plaintiff. One prisoner tried to attack plaintiff who swung at him and knocked him to the ground. From the high tower, the officer fired a shot which struck plaintiff in the right shoulder. Plaintiff's arm immediately went numb and he fell to the ground. The other two prisoners ran toward plaintiff with intentions of attacking him; however, prison staff entered recreation yard and pepper sprayed plaintiff including the other 3 prisoners. Staff handcuffed everyone behind their backs and then staff dragged them face down by their legs through the gravel on the ground. When staff realized that plaintiff had been shot in the right shoulder, they escorted him to the prison hospital. Upon examination, the medical staff determined that plaintiff needed emergency surgery and therefore called for an ambulance. The ambulance ride to the Houston Valley Hospital in East Tennessee took approximately two hours. En route to the hospital, plaintiff lost a considerable amount of blood. As a result, plaintiff struggled to stay conscious for the entire trip.

2. At the hospital, the medical team stopped the bleeding, gave plaintiff five transfusion bags of blood to replace the lost quantity, and stabilized plaintiff.

3. Five days later, on August 5, 2017, Plaintiff underwent surgery in which 14 screws and a metal plate was placed in plaintiff's right arm. On August 10, 2017, plaintiff was discharged from the hospital.

   B. FMC Lexington

4. On that same day, plaintiff did not return to USP Lee County because of his medical condition; thus, the BOP redesignated plaintiff for placement at FMC Lexington, a medical center.

5. On August 10, 2017, plaintiff arrived at FMC Lexington where he was classified as a transit segregational inmate. This classification required plaintiff to be placed in a special housing unit (SHU) which is a 23-hour per-day lockdown unit. **4**

   1. The Administrative remedy;

6. On September 6, 2017, plaintiff began the four-tier administrative

---

4   The BOP classified plaintiff as a transit seg inmate because he received a disciplinary report for the fight in the recreation yard at U.S.P. Lee County. Plus, the BOP wanted to place plaintiff in the USP Lewisburg Special Management Unit which is an 18month program. Nevertheless, until plaintiff fully recovered from his gunshot injury, he could not be designated to USP Lewisburg for SMU Placement.

Remedy procedure in regard to his excessive – force claim.

4

7. On that date, plaintiff filed a BP-8 in which he challenged the unjustified excessive force used by the tower officer who shot plaintiff; in addition, plaintiff argued that the tower officer violated protocol, regulations, and procedures when he discharged live ammunition from his rifle and hit plaintiff in the shoulder; plaintiff also contended that the tower officer fired no warning shot; and finally, plaintiff reasoned that non-lethal ammunition could have been used by tower officer, and lethal ammunition should have been last resort. **5**

8. On September 8, 2017, USP Lee County staff responded to plaintiff's

---

5 Since plaintiff was categorized as a transit seg Inmate, FMC Lexington staff cold not respond to his administrative remedy, BP-8, but USP Lee County staff was required to reply to plaintiff's excessive-force claim. BP-8 denying his administrative remedy for the excessive-force claim.

**6**

9. On September 9, 2017 plaintiff filed a BP-9 Appealing the denial

---

6 It is important to note that on September 9, 2017, the exact day plaintiff filed his BP-9, USP Lee County was placed on temporary lockdown status. During the lockdown, staff conducted massive interviews of inmates about the July 31, 2017 shooting of plaintiff. Although inmates stated that they only heard on shot fired, staff asked inmates to state they heard more than one shot fired. Notwithstanding this cover-up plot, inmates contacted plaintiff's mother to inform her of the cover-up plot of USP Lee County staff of his administrative remedy.

10. On September 18, 2017, plaintiff received a response to the BP-9. He was denied an administrative remedy based on the fact that he filed it more than 21 days after the incident.

The response was signed with the initials D.H. 7

---

    7   Plaintiff was extremely suspicious of the prompt response since it normally takes 30-90 days before receipt of a disposition. Plus, the initials of D.H. did not match the name of the USP Lee County Warden. No staff name at FMC Lexington could identify the person relative to D.H.

11. For the next 8 months, plaintiff unsuccessfully filed several BP-10 with the Regional office.

12. In May of 2018, plaintiff, however, learned that the September 18, 2017 denial of his BP-9 was denied by an unauthorized person. The initials D.H., in fact, belonged to the associate Warden of FMC Lexington. The associate Warden used the initials of her maiden name in order to escape detection.

13. That week when Warden Quintana toured the SHU, plaintiff sharply complained about the associate Warden's deception and lack of authority to deny the BP-9, which should have been sent to USP Lee County for a disposition by the warden.

14. During that conversation, Warden Quintana guaranteed plaintiff that he would correct the error and instruct the Lee County Warden to respond to the BP-9.

15. On May 4, 2018 the BP-9 was reinstated, and the Warden of Lee County denied it on May 25, 2018.

16. On May 26, 2018, plaintiff provided a BP-10 to the Unit Manager for mailing to the Regional Office for consideration of his excessive force claim's denial. During their brief dialogue, the Unit Manager made a smart remark, stating: "try doing your legal work in the SMU", the special management unit.

   C. USP Lewisburg's SMU

17. On May 31, 2018, plaintiff was transferred to USP Lewisburg where he was placed in the SMU.

18. On June 15m 2018, the Regional Office denied plaintiff's administrative remedy. Defendant SMU Counsel provided plaintiff with the unsealed Regional Office's response. Defendant issued plaintiff a BP-11 at his request for filing an appeal to the Central Office.

19. On June 21, 2018, plaintiff filed a BP-11 at the BOP-Central – Office level. On August 2, 2018, the Central Office denied plaintiff's request for a remedy pursuant to his excessive-force claim and, at that point, the administrative remedy procedure was exhausted.

   D. The Defendants obstructed Plaintiff from filing his Bivens complaint:

20. In and around early May of 2019, a Jailhouse lawyer drafted and completed plaintiff's Bivens Complaint, since Plaintiff is illiterate when it comes to law. **8**

> 8  The Jailhouse lawyer, Tashawn Quantrea Thorne, 59241-056, was assigned to the same housing unit as Plaintiff. Plaintiff consulted with him about his excessive-force claim. When the administrative remedy was exhausted, the Jailhouse lawyer drafted and completed a Bivens Claim. When the administrative remedy exhausted, the Jailhouse lawyer drafted and completed a Bivens Complain for Plaintiff which process took 4 to 5 months.

21. In mid May of 2019 Plaintiff gave the SMU Counselor the Bivens Complaint in order for him to make copies for the court and defendants. The following day the SMU Counselor return to Plaintiff's cell and handed him the original complain and the copies.

22. On May 22, 2019, plaintiff placed his Bivens Complaint and copies 9 in an envelope addressed

> 9  Plaintiff kept one copy of Bivens Complaint for his legal file.

to the United States District Court, Western District of Virginia, PO Box 490 Big Stone Gap, VA  24219.  On the envelope plaintiff also put sufficient postage and sufficient extra fees for a return receipt service. (hard copy, green card).  Plaintiff attached the return receipt to the back of the envelope.

23. On May 20, 2019, plaintiff gave the SMU Counselor the outgoing legal mail, which envelope contained the Bivens Complaint and copies. The SMU Counselor made a

8

smart remark stating, "You don't really ting you're going to win that lawsuit, do you?"

24. On October 2, 2019, plaintiff received the return receipt **10** from the mailroom. The return receipt indicated that the clerk of the court, who endorsed the return receipt with the signature "S. Daiar", received plaintiff Biven Complaints for processing and filing with the federal court.

---

**10** The return receipt, also known as a PS Form 3811 Domestic Return Receipt (DRR) (hard copy) is used for additional services. (see Exhibit 1, DRR)

25. In late June of 2019, plaintiff's cell was search by defendant John Dole #2 who unlawfully confiscated plaintiff's legal file which included his only copy of the Bivens Complaint. **11**   Plaintiff was given no confiscation form or

---

**11** Whenever property is confiscated by a prison official, they must provide the inmate with a confiscation form indication what items were confiscated and why the items were impounded. This procedure is mandated by the codes of Federal Regulations including BOP program statements.

Reason for the confiscation of his legal file; In addition, the file was never returned to plaintiff.

26. In and around 2019 plaintiff had his mother, Mellodye Green-Ragin, contact the clerk's office to inquire about the Bivens complaint.

9

27. After several phone calls plaintiff mother learned from the clerk's office that no Bivens complaint was received by the clerk's office from plaintiff. Moreover, the clerk's office informs plaintiff's mother that the name signed on the Return Receipt belonged to no one who worked at courthouse and clerk's office.

IV. Causes of Action:

Plaintiff charges the Defendants with the following causes of action:

First cause of Action

(Defendant SMU Counselor)

In and around May 20, 2019, at USP Lewisburg, Defendant SMU Counselor and Defendant John Doe #1 and possibly other unknown Defendants knowingly and intentionally conspired and agreed to intercept plaintiff's outgoing legal mail in order to obstruct the filing of his Bivens Complaint in the federal court. In and around the same date Defendant SMU Counselor and Defendant John Doe #1 (a mailroom officer), and possibly other unknown defendants, knowingly and intentionally intercepted plaintiff's outgoing legal mail and obstructed the filing of the Bivens Complaint by removing the Bivens Complaint from the sealed envelope and then delivering the empty and open envelope to the local post office for deliver to the federal court. **12**

Second Cause of Action

(Defendant John Doe #1)

12  An open and empty envelope would ensure that the post office would return the envelope to the sender. And this is exactly what happened. The Defendants then discarded the envelope, signed the Return Receipt with a bogus name, and then forwarded the Return Receipt to plaintiff, who would assume that the complaint had been received by the federal court for processing.

In and around May 20, 2019, at USP Lewisburg, Defendant John Doe #1 (a mailroom officer), and Defendant SMU Counselor, and possibly other unknown defendants, knowingly and intentionally conspired and agreed to intercept plaintiff's outgoing legal mail in order to obstruct the filing of his Bivens Complaint in the federal court. On or around the same date, Defendant John Doe #1, and Defendant SMU Counselor, and possibly other unknown Defendants, knowingly and intentionally intercepted plaintiff's outgoing legal mail and obstructed the filing of the Bivens Complaint from the sealed envelope and then delivering the empty and opened envelope to the local post office for deliver to the federal court.

### Third cause of Action

(Defendant John Doe #2)

In and around late June of 2019, at USP Lewisburg, Defendant John Doe #2, whose title is unknown, knowingly and intentionally conspired and agreed with Defendants SMU Counselor and John Doe #1 to peremptorily obstruct plaintiff from possibly mailing another Bivens Complaint to the federal district court.

On or around the same date Defendant John Doe #2 Knowingly and intentionally and lawfully confiscated plaintiff's legal file during a search of his cell. The legal file contained the only copy

11

of plaintiff's Bivens Complaint. The confiscation of the Bivens Complaint was specifically designed to obstruct plaintiff's subsequent mailing of his Bivens Complaint to the federal court.

V. Monetary Damages:

    A. Plaintiff seeks monetary damages from defendants in the amounts set forth below: Defendant SMU Counselor for Compensatory damages, plaintiff seeks A monetary award of $5,000,000 from Defendant SMU Counselor, in addition, for punitive damages, Plaintiff seeks a monetary award of $10,000,000 from Defendant SMU Counselor

    B. Defendant John Doe #1 for compensatory damages, plaintiff seeks a monetary award of $5,000,000 from Defendant John Doe #1; in addition, for punitive damages, plaintiff seeks a monetary award of $10,000,000 from Defendant John Doe #1.

    C. Defendant John Doe #2 for compensatory damages, plaintiff seeks a monetary award of $5,000,000 from Defendant John Doe #2; in addition, for punitive damages, plaintiff seeks a monetary award of $10,000,000 from Defendant John Doe #2

    D. Medical Expenses: Plaintiff seeks monetary damages from the Defendants to compensate plaintiff for all future medical costs and expenses relative to his right shoulder and right arm for the during of plaintiff's entire life.

**13**

VI Conclusion

Wherefore, plaintiff declares under penalty of perjury that foregoing is true and correct to the best of his knowledge.

Signed On this _____ day of _____, 2021.

Respectfully submitted,

*Theodore D. Briggs Jr.* (signature)

Theodore D. Briggs, Jr. Pro Se
26 High Street - Unit 2
Norwalk, CT. 06851

---

13 <u>Brewer V. Wilkerson</u>, 3 F3d 816, 825-26 (5th Cir 1993) (claim stated by prisoner alleging that prison officials intercepted inmates outgoing mail and removed legal documents).

**Jurat Notary Certificate (Only for use in AR, AZ, CO, CT, DC, DE, GA, ID, IA, IL, KS, KY, MA, MD, ME, MN, MO, MT, NH, NJ, NM, NY, NV, NC, OH, OK, OR, PA, RI, SC, TX, UT, VA, WA)**

**Document Name:** _____

STATE OF __Connecticut__
COUNTY OF __Fairfield__
(County where notarization occurred)

Subscribed and sworn before me on __7th__ day of __May__, 20__21__, by __Theodore D. Briggs JR__
_____ (name(s) of signer(s)), who personally appeared before me and (is personally known to me or whose identity was proved on the basis of satisfactory evidence) to be the person whose name is subscribed to in this document.

> INGRID X MONZON
> Notary Public, State of Connecticut
> My Commission Expires Dec. 31, 2023

_____
(Signature of notary public)

__Ingrid X Monzon__, Notary Public
(Name of notary public)

My commission expires: __12/31/2023__

**Official Seal**

Personally known _____ OR
Produced identification __✓__ Type of identification produced: __CT Drivers License.__

00-74-0509NSBW 12-2020